Circuit Court of Appeals, we have two cases to be submitted today on oral argument, and we begin with Siders v. City of Brandon. Mr. Kellum. Good morning. May it please the Court. My name is Nate Kellum, and I represent the appellant, Spring Siders. Ms. Siders seeks preliminary injunctive relief from a city ordinance that unconstitutionally hinders her protected speech in public forum. Brandon City Ordinance. This involves only her speech, not the speech of any kind of a group, is that right? That's correct, Judge Smith. She brings her claim just on base for herself and her expression. The city ordinance enforced against her precludes her ability to hand out literature, to hold a sign, to wear an expressive t-shirt, and to pray and counsel with individuals. She's seeking for us to look at the ordinance as a whole, is that correct? I'm sorry, I didn't understand the question. She's seeking for us to look at the ordinance as a whole? She brings it as a plight and facial challenge, Judge Douglas. The entire ordinance? The as a plight challenge would be considered first, and then if that does not prevail, then a facial challenge can be considered. First and foremost is as a plight and challenge as to her particular expression. Upon labeling her speech as a protest, and that's really the issue, is that the ordinance that purports to regulate protest and demonstrations as applied encompasses her evangelistic speech. Upon labeling her speech as a protest, the effect of which is that it removes her from a traditional public forum, which is this grassy area in a public park next to a public sidewalk, and it pushes her some 300 feet west into a location which is a sort of a box area, 29 by 16 feet, that is far removed from pedestrian traffic patterns. What it does, it eliminates her ability to get out her message. She cannot talk or pray with people because she cannot reach them. She's confined. Her speech is caged. For the same reason, she cannot hand out literature to individuals because she is confined to this space. Her expressive apparel becomes useless. And even her signage, because there are additional restrictions that are imposed within this box area that affects her ability to use a sign. That's probably the one thing where people could see from a distance, but she's even affected in this way because they have additional restrictions that keep her from elevating her sign to make it more readable. So for these reasons, Brandon's ordinance is not narrowly tailored to a significant government interest. The purported interest is public safety, but you do not have a fit between the purported interest and the restriction. What would be an example of some appropriate, more narrow tailoring? I would say if there's a concern about loud noise, it would be decibel level. You cannot have a certain decibel level that would affect the ability for people to be able to hear, whether from the amphitheater itself or even really the ability of police officers and others to be able to do their jobs. So it would really deal with the decibel level itself. Or if it deals with . . . I'm sorry, what's that, Judge Wayne? Are you saying there's a difference between handing out flyers and conversation? Is there a difference between those two? Yes. There is a difference in the sense that one is you're having a conversation and then the other, you're handing out literature, but the point is, for Ms. Siders, is that it restricts both. It restricts both of those things. Another thing as far as obstruction is you just make sure that they don't stand in a way of traffic. You can't stand where people are walking. You have to get out of the way. How is that different from what Brandon did here? Oh, it's a lot different, Judge, because they're removing them, they're putting them in a box 300 feet away. So they're not saying, hey, you need to step aside, you need to go 5 feet, 10 feet, 15 feet out of the way here so that people can walk. They're putting them in a box. So 5 feet, 10 feet would be okay, 300 feet is not okay? Certainly not, because at 5 feet, then you have means of communication left. You have the ability to be able to talk to people, perhaps, because they're only 5 feet away, they can hear what you're saying, they can read your signs, you say I have some literature I'd like for you to consider, 300 feet, not so much. So you could have a decimal restriction, which you've already said, and you could have a restriction, something reasonably having to do with impeding traffic? Yes, Judge. Yes, Judge. Those would seem to be reasonable measures. If that's the concern is public safety and causing congestion, that you would have things that would fit those problems. What about a restriction, I don't know exactly how it would be worded, having to do with crowds attending some event at the forum? Oh, I would think so, yeah. If you're standing in the way of where traffic is going, you need to get out of the way. And I would think that would be a common sense approach to it, that if you cannot stand in the way of traffic, because they have people going from point A to point B, and if you're obstructing . . . I'm talking about foot traffic now, here, not . . . Foot traffic, yes, Your Honor. And I think that would be an appropriate measure. Regrettably, they just go much, much further with their ordinance here. And what it seems to be, and what seems to have . . . it certainly has this effect, is it really goes much further than dealing with obstruction or dealing with safety. What it does is it really effectively eliminates speech. It mutes her speech. She's not . . . Because she has to stay so far away, is that right? Yes, Judge. That's right. So she can't hand out literature. She can't converse with people. Because they keep her signs down, she can't even elevate her signs. The signs are unreadable. They can't read her expressive T-shirt. So any conceivable way in which she could speak, it's eliminated because of where they are placing her. In the case of United States v. Grace, dealt with, I believe, a similar rule where that's a case involving the restriction of leafletting and sign-holding on the public sidewalk that's right outside of the Supreme Court grounds. And the court held there that the problem was that there was an insufficient nexus. And I think that's what we have here, is an insufficient nexus between the purported interest, and there it included public safety, and the prohibition on really pretty meager modes of communication. Another constitutional issue here is that the regulation, particularly of protest, is a content-based restriction. Because protest, the existence of which, is necessarily judged by its content. That's how you know that a protest exists, is by reading what is said, or hearing what is said. If someone was to hand out a flyer in Quarry Park, outside the amphitheater, and the concern was this musical group is playing songs that are offensive, the city should never allow this group to play in the amphitheater, well, that would be a protest. That flyer would constitute a protest. However, if you're handing out a flyer saying that a restaurant down the street is half off on pizzas, well, that's not a protest. Or if you're handing out a flyer saying I'm supporting this person for mayor of Brandon, that's not a protest. And so, that's how those things are judged, and because it's tied to and linked to content, it makes it content-based.  It deals with . . . What are the words from the ordinance that make it content-based, as opposed to content-neutral? The focus on the word protest, because protest, in order to make that determination, in order for an officer, okay, we know that it's regulating demonstrations, and we know it's regulating protest. Those are the two things that regulates, so if they're handing out flyers, do we know that's a protest? Well, let's take a look at it, and it says, well, this is for pizzas that are half off. That's not a protest. It says, we object to what this band is playing in the amphitheater, well, that comes across as a protest. What if it said, we support this band that's performing here, would that be a protest? It would not be a protest, not as that word is generally understood, because protest is a disapproval or an objection to something. But it could qualify as a demonstration. Handing out leisure? Well, that would seem to be a stretch of demonstration, but if that, and certainly if you're handing out something that's saying, well, pizzas are half off, I don't know how that could be considered a demonstration. No, not the pizza example. Oh, the agreement. I'm sorry. Perhaps, if that's how they interpret it, but demonstration is usually more of a public thing, where it's a public display, saying, where it could involve signs or perhaps some public speech of something of that nature. I want to read you a quote from Ward, it says, the validity of the regulation depends on the relation it bears to the overall problem the government seeks to correct, not on the individual's interest in an individual case. Is that dispositive of this case? Only to the extent that would apply to the facial challenge, Judge Wiener, but not the as applied. Because as the applied, you necessarily look at how does this ordinance apply to this particular individual in her speech. Now, in a facial challenge, it certainly would be appropriate to look at how does it apply as a whole, and is it unconstitutional in every application. That's what a facial challenge . . . The alternatives offered by the city, in your opinion, are not sufficient? I'm sorry. I didn't quite catch that, Judge. The alternatives offered by the city. No. Ms. Souders finds them woefully insufficient, because essentially, the alternatives is the to the box, 300 feet away, where you can't really get your message out. The only other alternative is to say, well, you can just leave the park. You can go somewhere else. You can go outside the park and speak. That is insufficient, because she's trying to reach the audience. She's trying to reach folks that are going to the amphitheater. She has to be able to be in a location where her message can be communicated. With this restriction, she simply cannot. Another issue that I believe comes with the protest is its vagueness. Again, she's just involved in evangelism. Her speech is, she's trying to convince people of the merits of Christianity. That's her speech. Yet, she's being regulated on a restriction of protest. By no stretch of imagination does she consider her speech a protest. She's not objecting to anything. She's not expressing disapproval of anything. Rather, she's trying to convince people that, hey, you ought to consider Christianity. Why don't you give that a try? Because of that, this application of this ordinance to her, which subjects her to a felony, is also a violation of due process. Demonstrating a violation of free speech, which I believe we have here, because it's not narrowly tailored and doesn't leave open ample alternative channels of communication, and also a violation of due process, because this application of this ordinance really does not give her fair notice, it doesn't give her fair warning, that misconduct is likely to prevail in this cause of action, therefore meeting that requisite for the standard of preliminary injunction. She meets the other factors as well. She is suffering irreparable harm. Arad v. Burns, a 1976 Supreme Court case, has made that clear, that the loss of constitutional freedoms, even if they're temporary, is irreparable harm. And this irreparable harm is great, significantly greater than any conceivable harm the city could sustain by being required to apply the ordinance in a constitutional way. And then, the last factor, dealing with public interest, in Opulent Life Church v. Holly Springs, it was held that the recognition and the protection of constitutional freedoms is surely in the best interest of the public. So, meeting all those requirements, we would just respectfully ask that this court would reverse the decision of the court below, and instruct the court to grant Ms. Sider's motion for preliminary injunction. In the . . . We're here, of course, on the preliminary injunction, regardless of how we rule, there's going to be some merits that will ensue, is that . . . is already there, is that right? That would be true. Yes, Your Honor. The district court relied somewhat on the Heritage v. Montgomery County case. Can you talk about that case a little bit? Sure. The Heritage case involved, similarly, involved sign-holding and leafletting in a public area. And then, also, in that case, there was a question about public preaching, which that gentleman had conducted. And what the appellate court held was that there's a difference between preaching or giving a speech, because that could have a tendency to draw a crowd, and hence, congestion, and just leafletting or sign-holding, where people can just pass by. So, it was remanded to the district court to entertain. What about these two activities? And so, that's currently before the district court. All right. You've saved time for rebuttal. Thank you. Okay. Thank you. Mr. Butler? Morning, Your Honor. Smith, police and court. This appeal arrives to the court from Chief Judge Jordan's denial of a preliminary injunction. That means there's a deferential standard of review with this court, having said that P.I. relief is both rare and extraordinary. Those high standards are not satisfied in this case, so we ask for an affirmance. There are several overarching principles that dictate the outcome of this appeal. The first is the obvious proposition that the First Amendment is not absolute, meaning that none of us have an absolute right to do or say anything we may want to at all given times in the public sphere. And that really is the central theme of this case. The plaintiff wants her preferred method of communication without regard to the interests of the city or to the concertgoers who pay a lot of money to attend amphitheater events. What's wrong with her saying that her communication, which is holding up a sign, having a t-shirt, maybe handing out leaflets, that she wishes to do that without going 300 feet away, the length of a football field in other words? Your Honor, there's a lot of things wrong with it. The first is that she doesn't get her preferred method of communication. That's not what the constitution . . . In a traditional public forum? You agree that this is a traditional public forum? I do not, Your Honor. I'm not willing to . . . How can you possibly say that this isn't? Your Honor, if you look at . . . it's certainly a sidewalk. Sidewalks as a general matter would be traditional public forum, but I would submit to the court . . . we submitted a 28-J letter that cites the post office case from the United States Supreme Court. This is much like the post office case because if you look at the picture in the record of the sidewalk where she wants to stand, that's not a sidewalk like in a park where people are running 5Ks or where people are walking their dogs. The very purpose of that sidewalk is a border to the amphitheater that leads to the front entrance of the amphitheater. That's the central purpose of that sidewalk. It's a sidewalk just like any other where people walk, right? It is, Your Honor, but the purpose of that particular sidewalk is to support what the record calls the crown jewel of this small town of 25,000 people. It's a huge economic development center. This is not some existing sidewalk that has been in place in the town for a long period of time. Again, where people would walk their dogs or the like. What about the example . . . excuse me, I don't mean to walk over you, but what about the example that was given a couple of minutes ago of someone handing out a leaflet saying that Joe's Pizza is offering half price today? Would that also be restricted by this ordinance? Your Honor, it's not clear to me that it would, and that's not the facts of this case. Ms. Siders has . . . Everybody in this courtroom knows those aren't the facts of this case. I'm giving you as a hypothetical. You would say that it would be okay for someone hired by Joe's Pizza to stand in that sidewalk and hand out announcements of half price. I'm saying that it's not clear to me that the city would ever enforce the ordinance against any litigature distribution. That's never happened. That's not the facts of this case, and that's not what . . . she's not been prohibited from doing that. So that would not be covered by the ordinance. That would be . . . two different concepts, and you know these two different concepts. Right. One is whether it's covered by the ordinance. Number two, whether the city would bother to enforce it. Exactly, Your Honor. My point is, I don't think it's covered by the ordinance. If you look to the definition that Judge Jordan supplied to demonstrations and protests, he says a public expression of ideas or beliefs. It's not clear to me that passing out literature to a person is a public expression. That's very much an offer and acceptance situation that depends on a person, a private transaction between two people. What if someone just wants to stand out on the sidewalk and hand out leaflets and hold up a sign saying, I love broccoli? Would that be covered by the ordinance? I think a sign holding up anything would be considered a demonstration under the ordinance and would support the . . . and goes directly to the interests of traffic safety and pedestrian safety. Okay, so the sign somehow makes a difference. What if it's just a T-shirt and handing out a leaflet saying, I love broccoli? Again, I do not think that the city would enforce the ordinance against any T-shirts. Would it be covered? No, I do not think . . . Why would that not be a demonstration? Because again, I don't think it's a . . . I don't think that it would be, Your Honor, but that's not the test and that's not the inquiry before the court. There are plenty of regulations that you could envision that would be . . . that could be in a different hypothetical scenario be applied in a unconstitutional manner. For example, disorderly conduct statutes were disturbing the peace. Under taxpayers for Vincent, the Supreme Court case, the Supreme Court says it is not the fact that there could be some conceivable application of the statute by some office or somewhere that would make it unconstitutional under the facts of this particular case. You agree that this is only an as-applied challenge as it involves only the conduct of this particular plaintiff's citers, is that right? That's what I think is a central issue before the court and I think the plaintiff comes very close to, in the reply brief, of conceding that. I don't think a facial challenge obviously is a difficult standard to ever citify a facial challenge. What you're saying is that the behavior of Olivier and others on Cider's group is not relevant to the as-applied challenge? No, I'm saying she cannot be successful in her as-applied challenge. If we were to consider the actions of others, then this as-applied challenge would become a facial challenge? I think it would, Your Honor. I think that's right. It's just as to hers. It's just as to her. As to her as-applied challenge, the standing that she has in this case, what she did is she showed up with a group, with an individual using amplification device, and she had banners and signs. What do you think is the things that should be considered why the amphitheater is a limited public forum? I think the very best case is the post office case from the Supreme Court and I think it The whole purpose of that is to lead to an entrance way to the amphitheater. It's not like a sidewalk in another context. Is it fenced in? Is the sidewalk fenced in in any manner or is it just free and open to the public? I'm sorry, Your Honor. Is the sidewalk fenced in? It's not fenced in. But I don't think, I think the 28-J that I submitted, it goes into that a little bit and says you're not automatically screened out from being a limited public forum just because it's not within a ticketed advance. There's precedent that would support. Let me be clear. I think I'm on solid ground under intermediate scrutiny as well. I'm just saying I think there's a good argument that the reasonableness standard would apply as well. One of the big points in this case that was neglected on my friend on the other side's is all the alternative channels that are available under this ordinance. The only alternative channels are not this protest area. That's only the alternative channel that is available within the restricted area. You have to remember there are seven main parking lots for this amphitheater. Only two of them are with inside the restricted area, meaning that there are five where the majority of the 8,500 people that come to these events, the majority of these people are outside of the restricted area, meaning she can do whatever she wants to do to catch these people before they come in. As long as she stays the length of a football field or more away. Not at all, Your Honor. The ordinance only applies to the restricted area. The five parking lots where the majority of people park at the ordinance are not within the restricted area. You misunderstood my comment, which I didn't state clearly enough. Still has to be 300 feet is the restricted area, right? With around the amphitheater. She can't do what she wants to do within 300 feet. Within that restricted area. But that's the whole essence of free speech and expression is the ability to do it in a way that people can hear and see. And so, of course, for some kind of an event forum such as this, people come to that forum and you want to be able to stand there and express yourself as people arrive. I don't understand how you can say that free speech is protected if people have to stay away. Your Honor, I think there's a factual disconnect here because the majority of the patrons that they don't automatically appear in the restricted area. They come from outside the restricted area. But they converge in the restricted area by definition, right? They do, Your Honor. They don't stay in their little parking lots and have a tailgate party. They come to the event forum. That's correct, Your Honor, and that sidewalk where she wants to stand, of course, that's where a majority of the pedestrian traffic converges at, but that's the very reason that there's such a significant public safety interest in protecting that particular parking, that particular area, because that's where pedestrian traffic is the heaviest. It's not difficult to imagine if you've got people dodging protesters and getting in the street. There's a factual record of police officers who have had to leave their post from directing traffic to go intervene with situations between patrons and protesters. There's vehicular traffic that is passing by that could be distracted by these signs. Again, she doesn't get her preferred method of communication. She just gets a reasonable opportunity to reach her audience, and she has that opportunity both within the restricted area and outside the restricted area. In your view, which part of her conduct is the city able constitutionally to prohibit? Is it a sign? Is it a leaflet? Is it a t-shirt? Is it speech, either loud speech such as with a microphone or private speech such as speaking to people as they pass by? Which of those things or others are restricted constitutionally in your view? For purposes of this case on the as-applied challenge, they're able to restrict the things that she actually did, which is show up in a group with people using amplification device and have the combination of literature, sign holding, and banners. At no point . . . Okay. So it's just showing up at the group. If she does it individually, it's okay? No. That's not at all what I'm saying, Your Honor. I'm just saying that's what's before the court. That's all she has standing for. All we have in front of us is whether there should be a preliminary injunction as it regards her and her conduct. Correct. I don't understand what the group has to do with it in terms of the appeal that we're hearing today. Because that's factually what happened. I would point to the panel opinion in the Net Choice case recently from here and citing Supreme Court precedent, what Judge Oldham said is when you have these kind of challenges that what you do is consider the actual facts of the case. It'd be easy to come up with a bunch of hypotheticals to say, well, the ordinance may be misapplied in X, Y, and Z different contexts, but we see that in all sorts of cases. Again, the Supreme Court has approved language like picketing and demonstrations, regulations that prohibit those things, and said that the fact that those aren't defined in a statute doesn't carry today. All right, so let's take a hypothetical person, and we'll name him Joe Jones, and he wishes to show up by himself individually and carry the sort of signs that Ms. Siders wishes to carry or to make the same kind of expressive conduct that she does. That would be okay under what you just told us. That is not what I'm saying. Joe's conduct would be forbidden by the ordinance. If Joe has a sign . . . Oh, it would be, all right, even though he's acting . . . excuse me, I apologize on your answering. I'm just trying to keep the dialogue going, so it doesn't have to do with whether it's individually or as a group. It does not, Your Honor. The ordinance addresses both protests and demonstration. The only point, and I think the one that Chief Judge Zerden accepted, is that's the prototypical type of protest activity, the people that show up in a group. My point is that's what happened in this case. That's the facts before this court in the context of a preliminary injunction. That's what happened. Again, I just . . . the inquiry doesn't . . . you certainly, in any given case, you could come up with different hypotheticals in an application of a disorderly conduct statute. People do it all the time. They challenge it in their criminal proceedings and say, this is unconstitutional to apply the disorderly conduct statute to me in this instance. It would be constitutionally applied in the hypothetical that I just gave you about Joe Jones. It would be covered by the ordinance and he could be criminally prosecuted, even though he was acting completely, under this hypothetical, completely alone by himself. Yes, Your Honor. His conduct of holding the sign up within the restricted area where the ordinance says he cannot hold it up, that would be a violation of the ordinance and the ordinance is constitutional under the intermediate scrutiny and certainly under a reasonableness standard. The cases that everybody usually grapples with in this kind of context are obviously the buffer zone cases. The plaintiff likes to cite McClellan. This is not a McClellan case. What was going on in McClellan is you had a twenty-four hour buffer zone. You had a situation where they were screening off the abortion clinic entirely, where people could pull up and go in the abortion clinic and avoid people trying to witness to them altogether. That is not at all what we have here. This is solely for a limited period of time and you have all of these alternative channels to reach the same target audience. The target audience are the people that show up, the eighty-five hundred people that show up to this amphitheater event and there are plenty of opportunities to reach these people both within the restricted area at the protest zone and the majority of them are outside of the restricted area. That's where they park at. How do you reach them within the restricted zone? Within the restricted area is the protest designated area. All right. Did you say seven parking lots? I'm sorry, Your Honor. You said there were seven parking lots. Seven main. Two in five. Two inside. Five outside. So the majority of people come from outside the restricted area. From the five. Okay. Where she could do anything she wants to. So if Ms. Siders wants to do what she wants to do in one of those five, she's unable to reach six parking areas. Is that right? Your Honor, there is no part of that. Obviously, yes or no part. Yes, it is. That's correct. You're correct, Your Honor, but there is no, the follow-up to that is there is no place in that amphitheater where you can reach everybody. There are eighty-five hundred people coming from all directions. So you can, you by necessity, there's only one of her, she has to pick a spot and try to reach somebody. And the Constitution, again, does not guarantee her her preferred place. It gives her a reasonable opportunity to reach her target audience and she has that in multiple ways both within the restricted area and outside of the restricted area. Your friend on the other side gave several examples of how this ordinance could have been made more narrowly tailored through decimals rather than banning amplification devices or changing the number of feet away from the sidewalks in question. Do you have a response to that? I do. That the Constitution, intermediate scrutiny does not require the least restrictive means. All it requires is a tie between the significant governmental interest, which nobody seriously disputes that, that there's a significant public interest in public safety. This is, you mentioned, Your Honor, the Heritage case. This is not like Heritage. This is not an unwritten rule that nobody knows how it's being applied. There was not a detailed factual engineering study in Heritage. There were not real world examples where police officers have offered affidavits of having to leave post and leave their assignment to break up, you know, interactions between protesters. There is not affidavits of a patron who, because, you know, an individual called her names that I won't say here today, that said that there was almost physical violence because, and had the police officer not been there, that that would have occurred. There's not that kind of a record. And we're here on a preliminary injunction, and again, the narrowly tailoring requirement, there's bleed over with narrowly tailoring and alternative channels. That's part of the narrowly tailoring inquiry. This is not a buffer zone case where she doesn't have an opportunity to reach anybody else. She in fact can reach people, you know, the majority of the people that come to these amphitheater events because they're coming from these parking lots, and she gets to do anything that she wants to outside of the restricted area. What is she able to do, if anything, inside the restrictive area in terms of her expressive conduct under the facts of this case? I think your answer would be nothing. She's able to do nothing. No, she can go to the protest area. What she can't do is what she tried to do with signs and coming in a group with people using amplification devices and using banners. She can't do that. At no point in time did she say, okay, I give up. I'm not going to use my banners. I'm not going to be with these people that have amplification devices. I'm not going to hold my sign. I just want to pass out literature. She never did that, and the city never told her that she could not do that. So she doesn't have standing to make that challenge on this appeal. Would she be able to come within the restrictive zone and hand out literature by herself? That's never been applied, but again, I don't think the city would interpret it that way because I wouldn't consider that a public demonstration or a public protest. It wouldn't be covered. I don't think it would be covered, and I don't think it would be applied, and it has never been applied in that way. I know we've parsed out several examples like leafletting or communication with folks who are walking by, but the fact is, in this case, she sought to have the entire ordinance stricken and not just any portion of the ordinance. That is correct, Your Honor, and that's a little . . . And that's part of the reason why the preliminary injunction was denied? Correct, Your Honor, and that's a little different, I think, than bringing two theories, bringing a facial and as applied, but even under her as . . . I think the way to say it is even under her as applied challenge, she didn't challenge the word protest. She didn't challenge the word demonstration. She challenged the application of the ordinance as a whole, and I think that's fair. All right. Thank you, Mr. Blackburn. Thank you, Your Honor. Mr. Ellum for rebuttal. Just briefly, Your Honor. Just a few things. Referring to the standard, I believe the case law is pretty clear that it'd be a de novo standard because under Byron v. Landriff, if it's a free speech claim, then it's reviewed de novo, and that would include also a preliminary injunction. As far as the form analysis, something has to be remembered. This is a sidewalk. This is a sidewalk in a public park, and those have traditionally been considered a traditional public forum. I don't believe the comparison, Mr. Butler referred to a post office case that was United States v. Coquinda. The plurality opinion really isn't applicable. That involved a sidewalk that was part of a government proprietor property. So if it's on the post office, on a public university, if it's some type of proprietor sidewalk, that could be a different standard, but when it's a city park and a city sidewalk in a city street, that's traditional public forum. Also, as far as . . . I believe the counsel's answers to questions about applicability to literature and really the vague responses, I think underscore the vague ordinance that we have saying, well, he's not sure it would cover literature, or maybe it wouldn't cover Joe's pizza flyer. That really speaks to the arbitrary nature of what's a protest, what's a demonstration, what falls into that. I think that goes to the violation of due process that's pretty prevalent here. He speaks to the restricted area and said, well, they can go outside the restricted area, but as shown in the record, the restricted area is huge. It's a huge area, and encompasses really the area where if anyone wants to try to reach a substantial number of the folks who are attending that event, wouldn't need to be if they plan on doing that. Any place outside the restricted area would be far beyond even the 300 feet that she's forced to go within it. Then also speaking to the as applied and facial aspect, while it is certainly true that it would involve the ordinance, it is as applied to her expression, her ability to leaflet, her ability to hold a sign, her ability to speak individually. What is your best case that our focus should be solely on her conduct in order to determine whether or not the ordinance is narrowly? The Seraphine case is a Fifth Circuit decision referring to as applied. What it shows in the record, we brought both as applied and a facial challenge to it, because I believe there's certainly good reasons to think it's facially unconstitutional, but the way that it's considered is you look at the as applied claim first, and that's what's prevalent. Thank you, Your Honors. I appreciate your consideration. Yes. Thank you, Mr. McCallum. Your case is under submission. The only remaining case for today, Crabtree v. Allstate.